Filed 4/1/26  P. v. Long CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICHARD BOB LONG, JR.,<br><br>Defendant and Appellant. | F087388<br><br>(Super. Ct. No. 20357)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County.  Kellee C. Westbrook, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs and John Merritt, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

In 1996, a jury convicted defendant Richard Bob Long, Jr., of multiple felonies, including possession of methamphetamine while armed with a firearm (Health & Saf. Code, § 11370.1), possession of a firearm by a felon (Pen. Code, former § 12020),

possession of methamphetamine (Health & Saf. Code, § 11377), escape from jail (Pen. Code, § 4532, subd. (b)), receiving stolen property (*id*., § 496, subd. (a)), and seven counts related to credit card fraud (*id*., §§ 484f, former subd. (2), 484g). (Undesignated statutory references are to the Penal Code.)  Five strike allegations and two prior prison term allegations were also found true.  The trial court sentenced defendant to two consecutive terms of 25 years to life for the possession offenses and the escape charge, plus a determinate term of two years for the prison priors, and two years for the credit card fraud related charges.

In 2014, defendant filed a petition to modify his sentence under the Three Strikes Reform Act (§ 1170.126; Reform Act or the Act), which the trial court denied.  In 2022, the Department of Corrections and Rehabilitation (CDCR) identified defendant as an individual potentially eligible for relief under section 1172.75.  The court held a resentencing hearing during which it dismissed defendant's prior prison term enhancements, but it declined to strike defendant's prior strikes.

On appeal, defendant argued the trial court erroneously resentenced him to an indeterminate term in prison as a three-strike defendant.  He contended none of his current convictions were for violent or serious felonies and he should have been resentenced under the Reform Act as a one-strike offender.

We previously rejected defendant's contention the trial court erred in failing to resentence him to second strike sentences under the Reform Act at resentencing. Thereafter, defendant filed a petition for review with the California Supreme Court.  The court granted defendant's petition and transferred the matter back to our court with directions to vacate our opinion and reconsider the matter in light of *People v. Superior Court* (*Guevara*) (2025) 18 Cal.5th 838 (*Guevara*).

We, and the parties, now agree the matter must be remanded to permit the trial court an opportunity to consider whether defendant is eligible for relief under the penalty provisions of the Reform Act.

# FACTUAL AND PROCEDURAL HISTORY

In 1995, defendant was charged with four counts of credit card forgery (§ 484f, former subd. (2)), three counts of credit card fraud (§ 484g), receiving stolen property (§ 496, subd. (a)), escape (§ 4532, subd. (b)), possession of a dangerous weapon (former § 12020), possession of a controlled substance while possessing a firearm (Health & Saf. Code, § 11370.1), and possession of a controlled substance (Health & Saf. Code, § 11377).[1]  It was further alleged defendant had previously suffered five prior burglary convictions that qualified as strike prior convictions (§§ 667, subd. (d), 1192.7, subd. (c)) and two prior prison terms as defined in section 667.5, former subdivision (b).

A jury convicted defendant of all of the charges.  Allegations defendant had previously suffered five strike prior convictions (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)) and he had served two prior prison terms within the meaning of section 667.5, former subdivision (b) were also found true.  The trial court sentenced defendant to an aggregate term of 52 years to life, consisting of 25 years to life for the escape conviction and a consecutive 25 years to life for the drugs and weapons possession convictions charged in the third case,[2] plus two years for the two prison prior enhancement allegations.[3]

In 2014, defendant moved for relief pursuant to section 1170.126, the Reform Act.  The trial court denied his petition.

---

[1]The credit card related offenses and the possession of stolen property offense were charged in Stanislaus Superior Court case No. 1876 (first case).  The escape was charged in Stanislaus Superior Court case No. 12683 (second case).  The drug and weapon offenses were charged in Stanislaus Superior Court case No. 20357 (third case).  The three cases were consolidated for trial.

[2]The abstract of judgment states one term of 25 years to life was "inclusive" for the violations of Penal Code former section 12020, and Health and Safety Code sections 11370.1 and 11377, plus a consecutive term of 25 years to life for the jail escape charge.

[3]The trial court dismissed the prior conviction allegations in connection with the first case and imposed concurrent two-year terms on each of the offenses in that case.

In 2022, the CDCR identified defendant as an individual potentially eligible for resentencing after the passage of Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483), and on August 15, 2023, defendant filed a "Resentencing Brief and Invitation for the Court to Strike and/or Dismiss Enhancements" (some capitalization omitted) in which he alleged his section 667.5, former subdivision (b) enhancements were now legally invalid, which made him eligible for recall and resentencing pursuant to Senate Bill 483. Defendant also asserted the court should apply " 'any other changes in law that reduce sentences or provide for judicial discretion' " at the section 1172.75 resentencing. Specifically, he asserted the trial court had authority to resentence him without imposing a strike term pursuant to Proposition 36 and/or *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. He also detailed alleged "mitigating circumstances," including that he "is over 60 years of age," "permanently disabled and uses a wheelchair," "has attended positive programming consistently since 2015," and "has been violation free since 2015."

The People filed a response to defendant's motion in which they agreed defendant's two prison prior enhancements should be stricken. They further asserted the trial court should deny additional resentencing based on defendant's criminal history and conduct while in prison. Specifically, they argued the court should deny defendant's request to dismiss his strike prior as part of resentencing because he poses an unreasonable risk of danger to the public. In support, they detailed defendant's rules violations while in custody. They noted, three years earlier, the parole board had found defendant to be an unreasonable risk to public safety based on his relapse, defendant had previously been denied relief under Proposition 36 in 2014, and he remained a risk to public safety. They also argued defendant fell within the spirit of the three strikes law based on his "past criminal conduct, his conduct in his case, and his criminal conduct while in prison." They attached to their response a transcript from defendant's 2020 parole suitability hearing along with the appellate opinion from his direct appeal,

the transcript from his 1988 change of plea in case No. 231130, and evidence of defendant's rules violations and "Custodial Counseling[s]" while incarcerated.

The trial court held a hearing on defendant's section 1172.75 petition for relief on October 23, 2023. At the hearing, defense counsel asserted, over the 25 plus years that defendant had been incarcerated, he had demonstrated "he is at this point certainly intent on keeping his sobriety." Defense counsel argued defendant, who was 63 at the time, had "earned his GED" and "been programming extremely well." She asserted there were four prison priors, two that were stayed, all of which the parties agreed should be stricken. Defense counsel also stated, with regard to the application of the Reform Act at resentencing, "I don't know if the Court has a question about … 1170.126 and whether it somehow supercedes [*sic*] 1172.75, but I would state that that issue is before the California Supreme Court, and the attorney general has switched their position to find that those two code sections can actually be read … as companion code sections. One does not rule out relief under the other. But again, supreme court is going to have the final say on that." Defense counsel asserted the court did not have a lot of sentencing discretion in this case, but the defense would be seeking another *Romero* motion and asking the court to "consider strongly the post-programming of [defendant] and consider sentencing without impression of a strike."

The prosecution stated it had "the certified priors," marked them as exhibits, and asked the court to consider them. The prosecutor then argued, "In 1995, [d]efendant was wanted for escaping. Officers responded to the location where they found … defendant with a sawed-off shotgun and a revolver. When clearing a vehicle in the garage where he was located, officers also found a sword and a .22 caliber revolver. When he was being booked, he was found in possession of methamphetamine." She also asserted defendant had multiple rules violations over the years, "including possession of … inmate-manufactured alcohol, controlled substance possession, mutual combat fighting, and paraphernalia." The People acknowledged defendant had "made improvements in

his programming" and "he has reduced his amount of violations."  However, in 2020, though defendant was 60 and eligible for elder parole release, the Board of Parole Hearings noted "he still struggled with substance abuse," and there was "a nexus between that and his criminality."  They concluded defendant was "an unreasonable risk to public safety," which "is a higher standard than what the Court is considering here as to whether additional sentencing is necessary."

The trial court noted defendant had been sober "for quite a substantial period of time now."  The People countered that defendant was still having violations in custody while in a secure environment so, "What are we to expect when he is released into society earlier than what is expected and earlier than the board thought necessary given the programming he'd been doing and his continued violations?"  Defense counsel responded that defendant had not had a rules violation since his early 50's and he was now 63 years old.  She argued, "[s]tatistically, he's pretty aged out in terms of whether we would expect he should commit a criminal offense if released."  Defendant also asked the court, if it declined to resentence him, to consider running his life sentences concurrently rather than consecutive to permit him an opportunity for parole.

The trial court took the matter under submission, noting defendant's age, that the majority of his offenses were theft- and drug-related, and that he had a violation in 2015.  The court further noted defendant "was in basically solitary confinement and knew that he couldn't get out unless he refused pain medication, and then he got out and couldn't take the pain anymore.  So there is some mitigating circumstances there."  The court also noted, "it requires a pretty high standard for me to deviate from the sentence that was already given."  It stated defendant would receive something in the mail when the court came to its decision.

In a written order dated December 7, 2023, the trial court declined to reduce defendant's sentence beyond striking the now invalid prison prior enhancements.  The December 7, 2023, order stated:

6.

"While the issue is not definitively decided, this court did grant [defendant] a full resentencing hearing. Arguments and exhibits were presented regarding [defendant]'s prior criminal history, his subsequent prison conduct, and the nature of the committing offenses.[5] [Defendant] has been continually involved with the criminal justice system since the age of 13. He was granted several grants of juvenile probation and sentenced to complete camps but was ultimately sentenced to the California Youth Authority in 1975. He was incarcerated in Utah and served time in the Colorado State Penitentiary. Then he sustained five counts of first-degree burglary in this county and was sentenced to over nine years in state prison. Thereafter, he was sentenced to two years in state prison in 1993 for a weapons offense. At the time of the current offense, he was still on parole for a previous offense. While incarcerated for some of the charges in this matter, he escaped and was found with a sawed-off shotgun, drugs and body armor.

"When evaluating [defendant]'s subsequent conduct, the court considered the extensive testimony given on October 30, 2020, at the parole suitability hearing. Since being in prison, [defendant] sustained several rule violations, but appeared to be engaging in rehabilitation. He had completed some programming, participated in work at the prison, and provided a plan for relapse. However, despite participating in these programs, [defendant] purchased medication on the prison yard just prior to his suitability hearing. Since 1974, [defendant] has been given opportunities to change his criminality and address his substance abuse problem. [Defendant] should be commended for his recent progress. The court notes that relapse, such as that suffered by the [defendant] in 2020, is often part of the recovery process. But after such a lengthy history where drug use precipitated much of [defendant]'s criminality, there is concern that [defendant] still poses an unreasonable safety risk. Additionally, he continued to fail to follow prison rules in 2022 when he refused to accept his cell assignment.

"His sentence still falls within the spirit of the Three Strikes Law, and the court does not find that the interests of justice would be furthered by dismissing the strike priors at this time."

Footnote 5 from the above quote states as follows:

"In 2014, [defendant] requested resentencing after the passage of the Three Strikes Reform Act. He was 'armed' with a sawed-off shotgun during his escape and committing offense and thus was disqualified from relief."

Accordingly, the abstracts of judgment reflect updated sentences of 25 years to life for the possession offenses and a consecutive term of 25 years to life for the jail escape, with additional terms of two years for each of the fraudulent credit card use and forgery offenses, ordered to run concurrently to the indeterminate terms.

## DISCUSSION

### I.  Resentencing Proceedings Under Section 1172.75

In October 2021, the Governor signed Senate Bill 483, effective on January 1, 2022, which added section 1171.1 to the Penal Code, subsequently renumbered as section 1172.75.  This section declares:  "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense … is legally invalid."  (§ 1172.75, subd. (a).)

Section 1172.75 establishes a mechanism to provide affected defendants an avenue for relief from now invalid prison prior enhancements.  Subdivision (b) directs the Secretary of the CDCR and the correctional administrator of each county to "identify those persons in their custody currently serving a term for a judgment" that includes a now legally invalid prior prison term enhancement, and to provide the names of such persons, their dates of birth, and the relevant case numbers or docket numbers to the sentencing court that imposed the enhancement.  (*Id*., subd. (b).)  After the court receives from the CDCR and county correctional administrator the information included in subdivision (b) of section 1172.75, "the court shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a)," and if so, "recall the sentence and resentence the defendant."  (*Id*., subd. (c).)

When resentencing a defendant under section 1172.75, the court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to

promote uniformity of sentencing." (*Id*., subd. (d)(2).) "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id*., subd. (d)(3).)

## II.    Three Strikes Reform Act

Defendant argues the trial court erred in failing to resentence him pursuant to the three strikes law in effect at the time of the section 1172.75 resentencing, which required him to be sentenced as a one-strike defendant pursuant to the Reform Act. We conclude a remand is appropriate for the court to determine whether defendant is eligible for resentencing pursuant to the penalty provisions of the Reform Act.

### A.    Applicable Law

"On November 6, 2012, the California electorate approved Proposition 36, otherwise known as the Three Strikes Reform Act of 2012 (the Act), which became effective the next day. Before the Act's passage, the 'Three Strikes' law provided that a recidivist offender with two or more qualifying strikes was subject to an indeterminate life sentence if the offender was convicted for any new felony offense. [Citation.] The Act amended the Three Strikes law so that an indeterminate life sentence may only be imposed where the offender's third strike is a serious and/or violent felony or where the offender is not eligible for a determinate sentence based on other disqualifying factors. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).)" (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 596–597.) The California Supreme Court has subsequently clarified that "when a court resentences a third strike defendant …, … the presence of a current offense that is serious or violent does not disqualify an inmate from resentencing with respect to a

current offense that is neither serious nor violent." (*People v. Johnson* (2015) 61 Cal.4th 674, 680.)

"In the Reform Act, the voters also established a procedure for 'persons presently serving an indeterminate term of imprisonment' under the prior version of the Three Strikes law to seek resentencing under the Reform Act's revised penalty structure. (§ 1170.126, subd. (a).) Under section 1170.126, 'within two years after the effective date of the act … or at a later date upon a showing of good cause,' such persons can file a petition for a recall of sentence before the trial court that entered the judgment of conviction. (*Id.*, subd. (b).) If the petitioner would have qualified for a shorter sentence under the Reform Act version of the law, taking into consideration the disqualifying factors (§ 1170.126, subds. (e), (f)), section 1170.126 provides that he 'shall be resentenced pursuant to [the Reform Act] unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety' (*id.*, subd. (f)). In exercising this discretion, the court may consider the defendant's criminal conviction history, the defendant's disciplinary record and record of rehabilitation while incarcerated, and '[a]ny other evidence the court … determines to be relevant.' " (*People v. Conley* (2016) 63 Cal.4th 646, 653.) Notably, section 1170.126, subdivision (k) provides, "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant."

In *Conley*, the California Supreme Court rejected the defendant's contention that he and others whose judgments were not final as of the effective date of the Reform Act were entitled to automatic resentencing under the revised penalty provisions of the Act. (*People v. Conley*, *supra*, 63 Cal.4th at pp. 657–659, 661–662.) The *Conley* court explained, "unlike the statute at issue in [*In re Estrada* (1965)] 63 Cal.2d 740, the Reform Act [was] not silent on the question of retroactivity. Rather, the Act expressly addresse[d] the question in [its resentencing provision], the sole purpose of which is to extend the benefits of the Act retroactively." (*Conley*, at p. 657.) And that provision

10.

"dr[ew] no distinction between persons serving final sentences and those serving nonfinal sentences, entitling both categories of prisoners to petition courts for recall of sentence under the Act." (*Ibid*.) The *Conley* court further explained, "the nature of the [Reform Act's] recall mechanism and the substantive limitations it contains call[ed] into question the central premise underlying the *Estrada* presumption," namely, that the lawmaking body had "categorically determined that 'imposition of a lesser punishment' will in all cases 'sufficiently serve the public interest.' " (*Conley*, at p. 658.) Therefore, instead of mandating lesser punishment in all cases, voters conditioned relief on a judicial assessment of the risk that resentencing would pose to public safety. (*Ibid*.; § 1170.126; accord, *People v. DeHoyos* (2018) 4 Cal.5th 594, 602.)

Recently, in *Guevara*, *supra*, 18 Cal.5th 838, the California Supreme Court granted review to consider whether the revised penalty provisions of the Reform Act may constitutionally apply at a resentencing pursuant to section 1172.75 of a nonserious, nonviolent third strike offender. (*Guevara*, at pp. 854, 878.) In *Guevara*, the defendant was sentenced in 2009 to an indeterminate term of 28 years to life following his third strike conviction, as then required by the Three Strikes law. (*Guevara*, at p. 849.) In 2023, after the passage of Senate Bill 483, the defendant was resentenced pursuant to section 1172.75 as a result of his now invalid prior prison term enhancements. (*Guevara*, at p. 850.) The trial court struck the prison prior enhancements and resentenced the defendant on his third strike offense according to the Reform Act to a determinate term of eight years. (*Ibid*.) The Court of Appeal granted the People's request for a temporary stay and issued an order to show cause. (*Id*. at p. 854.) The Court of Appeal then reversed the judgment, concluding the trial court's interpretation of section 1172.75 unconstitutionally amended the Reform Act. (*Guevara*, at p. 854.) The Supreme Court granted review. (*Ibid*.)

The *Guevara* majority held a defendant is entitled to a full resentencing pursuant to section 1172.75, including resentencing pursuant to the revised penalty provisions of

the Reform Act, provided that he or she can satisfy the substantive eligibility criteria established in section 1170.126. (*Guevara*, *supra*, 18 Cal.5th at p. 878.) Accordingly, the *Guevara* court reversed the judgment of the Court of Appeal and ordered the matter remanded to the trial court for it to determine whether resentencing "pursuant to the revised penalty provisions of the Reform Act would 'pose an unreasonable risk of danger to public safety.' " (*Ibid*.) If so, the trial court was directed to "reimpose an indeterminate term." (*Ibid*.) If not, the trial court was directed to resentence the defendant pursuant to the revised penalty provisions of the Reform Act. (*Guevara*, at p. 878.)

In concluding the revised penalty provisions of the Reform Act apply during a section 1172.75 resentencing, provided a defendant satisfies the substantive eligibility criteria established in section 1170.126, the *Guevara* majority found the language of section 1170.126 and section 1172.75 could be harmonized. (*Guevara*, *supra*, 18 Cal.5th at pp. 870, 875.) The court noted, "[t]here can be no question that the voters who enacted the Reform Act were focused on reforming Three Strike sentencing without undermining public safety." (*Id*. at p. 863.) "[S]ection 1170.126, subdivision (k) nonetheless guarantees that defendants entitled to seek relief under section 1170.126 may access 'rights or remedies otherwise available,' " undermining a conclusion that the Reform Act was the exclusive means to obtain sentencing relief. (*Id*. at pp. 859, 863) The *Guevara* court held "[c]onstruing the discretionary public safety determination of section 1170.126 as applicable at a section 1172.75 resentencing ' " ' " 'maintain[s] the integrity of both statutes,' " ' " ' such that ' " ' " 'the two may stand together.' " ' " ' " (*Id*. at p. 865.)

The *Guevara* majority further reasoned section 1172.75's instruction to apply " 'changes in law that reduce sentences' is ambiguous" in that it "does not specify how to determine the relevant 'change[s] in law' in the context of the Three Strikes law's parallel prospective and retrospective provisions." (*Guevara*, *supra*, 18 Cal.5th at p. 867.) Given this ambiguity, "and the constitutional questions raised by not incorporating

12.

section 1170.126's substantive requirements," the *Guevara* majority concluded "the case to incorporate the public safety exception is 'not only plausible, but compelled by the canon of constitutional avoidance.' " (*Id*. at p. 868.) That is, "construing the Reform Act's substantive limitations as operational through section 1172.75's instruction to apply relevant 'changes in law' harmonizes the two statutes and renders section 1172.75 ' "free from doubt as to its constitutionality." ' " (*Id*. at p. 869.) *Guevara* clarified that, "[r]esentencing [pursuant to the Reform Act] is not 'automatic' as in *Conley* because … [the defendant] must satisfy the substantive requirements of section 1170.126 .…" (*Id*. at p. 861.) The *Guevara* court further held, "[h]armonization does not require that section 1172.75 mirror the nonsubstantive order of operations relevant to defendants pursuing relief through section 1170.126 petitions." (*Id*. at p. 870.) Rather, "[s]ection 1170.126's technical processes are inapplicable at a resentencing pursuant to other mechanisms, like section 1172.75, which have separate procedural requirements that defendants must fulfill." (*Ibid*.)

## B.     Analysis

In his original briefing, defendant argued none of his convictions were violent or serious felonies. He asserted, he should have been resentenced under the three strikes law in effect at the time of the section 1172.75 resentencing hearing and, accordingly, he should have been resentenced as a one-strike defendant. Accordingly, he contended the matter should be remanded to the trial court for another sentencing hearing.

The People responded that they agreed with defendant "in part." They contended, "[t]he provisions of section 1172.75, when read in conjunction with the modifications to section 1170.126 under the Reform Act, entitle a prisoner such as [defendant] to full resentencing under both provisions." They further asserted, despite this concession, "because the jury necessarily found that [defendant] was armed during the commission of

13.

the offense of possessing methamphetamine while armed with a firearm (Health & Saf. Code, § 11370.1), he was not eligible for relief on that count."

In our prior opinion, we rejected the parties' arguments that the trial court should have automatically resentenced defendant under the Reform Act. After the matter was transferred back to us from the California Supreme Court, the parties filed supplemental briefing agreeing that a remand is appropriate to permit the court to consider if defendant is eligible for relief under the penalty provisions of the Reform Act. The People note, "on remand, the trial court must also consider whether at least some of appellant's convictions are disqualified for relief under the Reform Act's arming provisions," specifically referencing defendant's conviction for possession of methamphetamine while armed with a firearm (Health & Saf. Code, § 11370.1). The People further note that defendant's "conviction under former section 12020 may be precluded from relief under the Reform Act," "if the evidence shows that the firearm was immediately available for use either offensively or defensively" when defendant unlawfully possessed it.

In line with *Guevara*, we now conclude remand is appropriate for the trial court to determine whether defendant meets the substantive qualifications for relief pursuant to the penalty provisions of the Reform Act. That is, on remand the court should consider on which convictions defendant may be eligible for relief pursuant to the Reform Act and, "pursuant to the revised penalty provisions of the Reform Act," if defendant "would 'pose an unreasonable risk of danger to public safety.' " (*Guevara*, *supra*, 18 Cal.5th at p. 878.) If the court determines that resentencing defendant pursuant to the revised penalty provisions of the Reform Act would " 'pose an unreasonable risk of danger to public safety,' " the court shall reimpose an indeterminate term on those counts. (§ 1170.126, subds. (f)–(g).) If the court determines that resentencing defendant would not " 'pose an unreasonable risk of danger to public safety,' " and defendant is otherwise eligible for relief under the Reform Act, the court shall resentence defendant pursuant to

the revised penalty provisions of the Reform Act on the eligible counts.  (§§ 1170.126, subds. (f)–(g), 1170.12, subd. (c)(1), (2)(C), 1172.75, subd. (c).).

We note "[t]he resentencing court is not bound by the prior dangerousness determination associated with [defendant's] section 1170.126. petition." (*Guevara*, *supra*, 18 Cal.5th at p. 878, fn. 17.)  "Rather, section 1172.75 requires that the resentencing court make[] a new determination as to whether a defendant's resentencing would 'pose an unreasonable risk of danger to public safety' as of the present day. (§ 1170.126, subd. (f).)  A prior finding that a particular defendant poses a risk to public safety under section 1170.126, subdivision (f) is unquestionably relevant, and will no doubt be given consideration by a court subsequently resolving a resentencing under section 1172.75 involving an indeterminate Three Strikes sentence.  However, given significant passage of time, it is possible that a defendant who once presented a threat to public safety may no longer do so.  For instance, not only may defendants present evidence that they have significantly rehabilitated since a prior section 1170.126 proceeding, but serious illness or advanced age may have substantially reduced the danger to public safety they once posed.  Realistically assessing such changed circumstances is appropriately left to the trial court on remand." (*Ibid.*)

## DISPOSITION

The trial court's resentencing order is reversed and the matter is remanded for a new resentencing hearing consistent with this opinion.


PEÑA, J.

WE CONCUR:


LEVY, Acting P. J.


DESANTOS, J.

15.